IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ACUMED LLC, a Delaware limited                   04-CV-0513-BR
liability company,

        Plaintiff,                               OPINION AND ORDER

v.

STRYKER CORPORATION, STRYKER SALES
CORPORATION, STRYKER ORTHOPAEDICS,
and HOWMEDICA OSTEONICS CORP.,

        Defendants.


PETER E. HEUSER
JAMES R. ABNEY
Kolisch Hartwell, P.C.
520 S.W. Yamhill Street, Suite 200
Portland, OR  97204
(503) 224-6655

PAUL VICKREY
ROBERT A. VITALE, JR.
RICHARD B. MEGLEY, JR.
FREDERICK C. LANEY
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733

        Attorneys for Plaintiff


1 - OPINION AND ORDER

**JOHN F. NEUPERT**
Miller Nash LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, OR  97204
(503) 224-5858

**GREGORY J. VOGLER**
**SHARON A. HWANG**
McAndrews, Held & Maloy, LTD.
500 West Madison Street, 34th Floor
Chicago, IL 60661
(312) 775-8000

      Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Plaintiff Acumed LLC's Motion for Treble Damages and Prejudgment Interest Pursuant to 28 U.S.C. § 284 (#163).

    For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Acumed's Motion and awards Acumed a fifty-percent enhancement of damages determined by the jury for a total award of $688,280.  The Court also awards Acumed prejudgment interest in the amount of $20,517.


**PROCEDURAL BACKGROUND**

    In April 2004, Acumed brought this action against Defendants for infringement of United States Patent No. 5,472,444 ('444 Patent).  The '444 Patent describes a humeral nail used for the treatment of bone fractures, specifically for the fixation of

2 - OPINION AND ORDER

fractures of the proximal humeral cortex.    Acumed manufactures and sells patented humeral nails under the names Polarus and Polarus Plus.  Acumed alleged Defendants infringed the '444 Patent by manufacturing, using, selling, importing, and offering for sale their T2 Proximal Humeral Nail.

The case was tried to a jury on September 13-20, 2005.  On September 20, 2005, the jury found in favor of Acumed.  In response to special verdict questions, the jury found the '444 Patent was valid and that Defendants willfully infringed Claims 1, 3-5, 10, 11, and 14-17 of the '444 Patent.  The jury awarded Acumed damages in the form of lost profits in the amount of $419,683.00 and a reasonable royalty in the amount of $39,170.00.

On February 22, 2006, the Court heard oral argument on the following four post-trial motions:

1. Acumed's Motion for Permanent Injunction (#161);

2. Defendants' Motion for Stay of Injunctive Relief Pending Appeal (#172);

3. Defendants' Motion for JMOL or a New Trial on the Issues of Infringement, Willfulness, and Lost Profits (#174); and

4. Acumed's Motion for Treble Damages and Prejudgment Interest Pursuant to 28 U.S.C. § 284.

At the hearing, the Court resolved the first three Motions on the record.  Accordingly, this Opinion and Order addresses only Acumed's Motion for Treble Damages.

3 - OPINION AND ORDER

## STANDARDS

In a patent action, the court may "increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  Enhanced damages are punitive rather than compensatory.  *SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.*, 127 F.3d 1462, 1464 (Fed. Cir. 1997).  When willful infringement has been found, "the enhancement of damages and the amount thereof remains within the discretion of the court."  *Id.* at 1468-69.

> The principal considerations in enhancement of damages are the same as those of the willfulness determination, but in greater nuance as may affect the degree of enhancement.  Thus egregiousness of the infringer's conduct may receive greater emphasis, as may any mitigating factors.  All aspects relevant to a particular case should be given the weight appropriate to their substance.  A broad range of discretion is reposed in the trial court, founded on this need to weigh and balance multiple factors in determining a just remedy.

*Id.* at 1469.

A finding of willful infringement, however, does not mandate enhancement of damages.  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).  The paramount consideration when deciding whether to grant enhancement "is the egregiousness of the defendant's conduct based on all the facts and circumstances."  *Id.*

Courts may consider various factors when deciding whether to enhance damages, including the following:

4 - OPINION AND ORDER

1.   whether the infringer deliberately copied the ideas or design of another,

2.   whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or not infringed,

3.   the infringer's behavior as a party to the litigation,

4.   the infringer's size and financial condition,

5.   the closeness of the case,

6.   the duration of the defendant's misconduct,

7.   any remedial action taken by the defendant,

8.   the defendant's motivation for harm, and

9.   whether the defendant attempted to conceal its conduct.

*Read*, 970 F.2d at 827.


## DISCUSSION

### A.   Enhancement of Damages

As noted, after a five-day trial, the jury concluded Defendants willfully infringed the '444 Patent when they marketed and sold the T2 nail.  The jury awarded Acumed damages for lost profits and a reasonable royalty.  Acumed now argues the Court should treble the jury's damages award due to Defendants' egregious conduct.

The Court has considered the evidence in the record and the parties' written and oral arguments as to the application of the

5 - OPINION AND ORDER

factors set forth in *Read* and finds the following:

1.    **Defendants' Deliberate Copying**

Defendants do not deny they set out to develop a device similar to the Polarus in order to achieve the same purpose as the Polarus; namely, the fixation of proximal humeral fractures. In their early planning for a proximal humeral nail device, Defendants considered two different designs:  a curved-nail design based on the Polarus nail and a straight-nail design based on the Aesculap nail.  Defendants' nail design, like the Polarus, specified a precise length of 150 millimeters.  There was not another device on the market with that precise dimension. Defendants ultimately decided to proceed with the curved-nail design.

In its patent application for the T2 nail, Defendants state they learned about its design features by means of the '444 Patent.  In their application, Defendants state:

> This invention is related . . . to a humeral
> nail having a plurality of holes being
> angularly offset, both in a plane
> perpendicular to the nail axis and at an
> angle to that plane. . . .  A humeral nail of
> the described type has become known from U.S.
> Patent No. 5,472,444.

In addition, in their 510(k) application to the Food and Drug Administration for approval of the T2 nail, Defendants referenced the Polarus nail.  Acumed also presented evidence at trial that Joseph DiCicco, a Stryker employee, "confiscated" an otherwise

confidential Polarus operating-room chart from a hospital.  The
chart described how to use the Polarus nail.

On this record, the Court finds there is sufficient evidence
to establish that Defendants deliberately copied the Polarus
nail.  This factor, therefore, weighs in favor of enhancement of
Acumed's damages.

### 2.   Defendants' Investigation and Good-Faith Belief that They Did Not Infringe the '444 Patent

Defendants received warnings from two different lawyers that
the "curved-shank" design would infringe the '444 Patent.
In a letter dated November 14, 2002, Edo Graalfs, Stryker's
German patent attorney, asked Raymond Augustin, Stryker's United
States patent attorney, to "find out whether . . . it might be
possible to find a structure for a nail not covered by" the '444
Patent.  On December 13, 2002, Augustin wrote a "memo to file"
in which he states the proposed design of the T2 nail would
infringe the '444 Patent and should not be marketed in the United
States.

In spite of these two initial warnings, Defendants proceeded
with the curved-nail design for "business reasons."  Those
business reasons included specific goals to "attack" Acumed, to
target existing Polarus accounts, and to "take 75% of the Acumed
business by the end of the first year in the market."

On November 19, 2003, however, Augustin issued a formal,
written opinion in which he concluded the T2 nail did not

7 - OPINION AND ORDER

infringe the '444 Patent because the T2 nail does not have a "curved shank" and, even if a court should find the T2 had a curved shank, the '444 Patent was likely to be invalid as anticipated by the "Alta with Locking Tab" device. Acumed argued at trial that Augustin's opinion was obtained by Defendants only to justify their planned infringement of the '444 Patent and the opinion did not provide a reasonable basis for Defendants to believe the T2 did not infringe.

To reach the conclusion that Defendants' infringement was willful, the jury was required to find by clear and convincing evidence that Defendants acted in disregard of the '444 Patent and lacked a reasonable basis to believe they had a right to market the T2 nail. *See Amstead Indus. v. Buckeye Steel Casing*, 24 F.3d 178, 181 (Fed. Cir. 1994). Even after hearing evidence about Augustin's second opinion, the jury found Defendants' infringement was willful. Thus, the jury implicitly rejected Defendants' arguments that they had a good-faith belief the patent was not infringed or, in any event, that the patent was invalid. The Court, nonetheless, does not conclude from this record that Defendants egregiously ignored an objectively unreliable legal opinion. The Court, therefore, finds this factor standing alone does not warrant enhancement of Acumed's damages.

### 3.    Defendants' Litigation Conduct

Acumed contends Defendants' conduct during both the pretrial phase of the case and the trial warrants an enhancement of damages.  Specifically, Acumed asserts deposition conduct by Defendants' counsel, Defendants' repeated motions for reconsideration, their written discovery responses, and their trial conduct were egregious.

### A.    Conduct during Depositions

During several depositions, Gregory Vogler, Defendants' attorney, repeatedly interrupted Acumed's lawyer and told him that he was asking "stupid questions," called Acumed's attorney a "rookie lawyer," and told him at one point to "go talk to your senior lawyer that knows how to take a deposition and he might help you."  Although Vogler apologizes and acknowledges responsibility in response to Acumed's Motion for Treble Damages, Defendants also assert Vogler's inappropriate comments "were made during an arduous week of depositions" and these isolated comments did not rise to a level of misconduct sufficient to support enhanced damages in the context of the massive number of deposition questions asked by Acumed.

As the Court noted at oral argument, Vogler's conduct as reflected in the deposition transcripts was unacceptable, unprofessional, and completely inexcusable.  The Court condemns the conduct of Stryker's counsel but concludes such conduct

9 - OPINION AND ORDER

standing alone does not warrant enhancement of damages.

**B.    Conduct During Discovery**

Acumed argues Defendants denied nearly all of Acumed's Second Set of Requests for Admission without a good-faith basis to do so and failed to supplement their discovery responses to disclose Defendants' launch of the T2 Long nail.  The Court, however, is not persuaded Defendants engaged in discovery misconduct to a degree that warrants enhancement of damages.

**C.    Motions for Reconsideration and Conduct During Trial**

Acumed asserts Defendants' two motions for reconsideration are evidence of litigation misconduct that supports enhanced damages.  Acumed also argues Defendants continued to make the same claim construction arguments during trial that the Court rejected in its claim-construction rulings to the degree that Defendants effectively ignored the Court's rulings.  In addition, Acumed argues Defendants' witnesses were impeached at trial with their prior sworn testimony "an extraordinary number of times."  Acumed also asserts Peter Prager, Stryker's Director of Product Development, testified falsely on a number of points, including his statements that Stryker's repeated references to the T2 as "curved" were a mistake and his testimony that any similarities between the T2 and the Polaris were "sheer coincidence."

The Court finds Defendants' conduct constituted

10 - OPINION AND ORDER

stubborn and unsuccessful advocacy of Defendants' theories of the case at worst and, therefore, does not warrant enhancement standing alone.

In summary, the Court is not persuaded the record establishes that Defendants' conduct during this litigation was in bad faith or otherwise sufficiently egregious to warrant enhancement of damages.

**4.    Defendants' Size and Financial Condition**

Stryker is the largest orthopaedic implant company in the world with 2004 sales in excess of $4 billion.  Acumed contends Stryker's size and profits allowed Defendants to "roll the dice" in this litigation with impunity and in the hope that Acumed would be forced to give up.  Acumed argues trebling of damages is appropriate when a "market behemoth" such as Stryker engages in willful infringement.

The Court agrees Stryker's size and financial condition made it possible for Defendants to pursue this litigation with particular agression.  In addition, enhancing Acumed's damages would not be an undue hardship to Defendants.  Accordingly, the Court concludes this factor weighs slightly in favor of enhancement of damages.

**5.    Closeness of the Case**

The Court finds the issues of infringement and willfulness presented classic jury questions.  The evidence did not

11 - OPINION AND ORDER

overwhelmingly favor either side, and the jury could have rejected Acumed's claims.  In other words, this was a close case on many issues, including the willfullness of Defendants' infringement.

Accordingly, the Court finds enhancement of damages based on this factor would result in punishing Defendants for going to trial and seeking to provie legitimate defenses.  The Court concludes, therefore, this factor weighs against enhancement of damages.

### 6.    Duration of Defendants' Misconduct

Acumed argues Defendants' misconduct started in early 2002 when their attempt to buy Acumed was rebuffed, and their misconduct continued even after the verdict.  Acumed, however, brought this action shortly after Defendants first marketed the T2 nail.  Defendants launched the T2 nail in early 2004 and Acumed filed this action in April 2004.  The case came to trial without undue delay.  Defendants' infringement, therefore, did not continue for an excessive length of time.

Accordingly, the Court concludes this factor does not weigh in favor of enhancement of damages.

### 7.    Remedial Action by Defendants

Acumed argues enhancement of damages is warranted because Defendants did not immediately remove the T2 nail from the market after the jury's verdict in September 2005.  Defendants, however,

12 - OPINION AND ORDER

have disputed the jury's findings and filed timely post-trial
motions to contest the verdict.  Due to the numerous post-trial
motions, the Court did not enter an injunction until February 23,
2006.  Moreover, the Federal Circuit now has stayed the
injunction pending Defendants' appeal.

The Court concludes Defendants' actions in vigorously
pursuing its right to contest the verdict do not support
enhancement of damages.

**8.  Defendants' Motivation for Harm**

There is evidence in the record from which a rational juror
could conclude Defendants set out on a deliberate course to
eliminate their competition after Defendants were unable to buy
Acumed outright.  This evidence includes statements by Stryker
that it planned to "attack competitors," to "eliminate the
Polarus," and to "target existing Polarus accounts."  In
addition, Acumed argues Rosemary Buckle, M.D., an orthopaedic
surgeon and Stryker's medical consultant, deliberately decided
not to use the Polarus cap screw to prevent screw back-out
because she wanted to bolster the evidence that the Polarus nail
had problems and, thereby, to create a demand for the T2 nail.
Acumed essentially accuses Dr. Buckle of jeopardizing the health
of her patients in order to prove the Polarus had problems.

The Court finds the record does not support this accusation,
and, therefore, the Court does not consider this argument in

reaching its conclusion.    The Court, however, concludes the evidence of Defendants' apparent goal of eliminating Acumed in combination with Defendants' size and financial condition relative to Acumed weighs in favor of enhancement of damages.

**9.    Defendants' Concealment of Their Infringement**

Acumed argues Defendants attempted to conceal their infringement by failing to supplement their discovery responses regarding Stryker's launch of the T2 Long nail and by asserting various positions at trial.    The Court, however, does not find Acumed's arguments persuasive.    Acumed made a tactical decision early in this case not to include any claims based on the T2 Long nail.    Moreover, the record does not establish Defendants took any extraordinary steps to conceal their infringement of the '444 Patent.    The Court, therefore, finds this factor does not weigh in favor of enhancement.

In summary, the Court is persuaded that factors 1, 4, 5, and 8, together with the jury's finding of willfulness in this factually contested case, support a fifty-percent enhancement of Acumed's damages.    Although Defendants' infringement was willful, the Court finds their conduct was not so egregious as to warrant trebling of the damages.    The jury awarded Acumed $458,853.    The total enhanced award, therefore, is $688,280.

**B.    Prejudgment Interest**

Acumed also asks the Court to award prejudgment interest on

14 - OPINION AND ORDER

the jury's damages award.  Defendants do not oppose this request.

Prejudgment interest ordinarily is awarded to ensure that damages are adequate to compensate the patentee for infringement. *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed. Cir. 1983). The court has "wide latitude in the selection of interest rates . . . and may award interest at or above the prime rate." *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991)(citations omitted).  Prejudgment interest is awarded only on the actual damage award and not on the enhanced portion. *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1389 (Fed. Cir. 1983).

The Court finds, and the parties agree, Acumed is entitled to prejudgment interest from September 20, 2005, through the date of judgment at the United States Treasury Bond rate.

Accordingly, prejudgment interest through April 17, 2006, equals $20,517.

<u>CONCLUSION</u>

For these reasons, the Court **GRANTS in part** and **DENIES in part** Acumed's Motion for Treble Damages and Prejudgment Interest Pursuant to 28 U.S.C. § 284 (#163).  The Court awards Acumed a fifty-percent enhancement of the damages determined by the jury

for a total of $688,280.  In addition, the Court awards Acumed

prejudgment interest in the amount of $20,517.

The Court directs Acumed's counsel to submit an appropriate

form of judgment.

IT IS SO ORDERED.

DATED this 17th day of April, 2006.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

16 - OPINION AND ORDER