IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ACUMED LLC,                                    04-CV-513-BR

       Plaintiff,                          OPINION AND ORDER

v.

STRYKER CORPORATION,
STRYKER SALES CORPORATION,
STRYKER ORTHOPAEDICS, and
HOWMEDICA OSTEONICS CORPORATION,

      Defendants.


**JAMES R. ABNEY**
**PETER E. HEUSER**
Kolisch Hartwell, PC
200 Pacific Building
520 S.W. Yamhill Street
Portland, OR 97204
(503) 224-6655

**PAUL K. VICKREY**
**ROBERT A. VITALE, JR.**
**RICHARD B. MEAGLEY, JR.**
**FREDERICK C. LANEY**
Niro, Scavone, Haller & Niro
181 W. Madison
Suite 4600
Chicago, IL 60602-4515
(312) 236-0733

      Attorneys for Plaintiff


1 - OPINION AND ORDER

**GREGORY J. VOGLER**
**SHARON A. HWANG**
McAndrews, Held & Malloy
500 W. Madison
34th Floor
Chicago, IL 60661
(312) 775-8000

**JOHN F. NEUPERT**
Miller Nash LLP
111 S.W. Fifth Avenue
Suite 3400
Portland, OR 97204
(503) 224-5858

                 Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Defendants' Motion to Strike New Facts and Arguments (#247), Plaintiff's Motion for Entry of Permanent Injunction (#231), and Plaintiff's Motion for Enhancement of Damages (#241). For the reasons that follow, the Court **DENIES** Defendants' Motion to Strike New Facts and Arguments, **GRANTS** Plaintiff's Motion for Entry of Permanent Injunction, and **DENIES** Plaintiff's Motion for Enhancement of Damages.


<u>**BACKGROUND**</u>

     In April 2004, Plaintiff Acumed, LLC, brought this action against Defendants Stryker Corporation, Stryker Sales Corporation, Stryker Orthopaedics, and Howmedica Osteonics Corporation for infringement of United States Patent No.

2 - OPINION AND ORDER

5,472,444 ('444 Patent).  The '444 Patent describes a humeral nail used for the treatment of bone fractures, specifically for the fixation of fractures of the proximal humeral cortex. Acumed manufactures and sells patented humeral nails (PHN) under the names Polarus and Polarus Plus.  Acumed alleged Defendants infringed the '444 Patent by manufacturing, using, selling, importing, and offering for sale their T2 Proximal Humeral Nail (T2 PHN).

The case was tried to a jury on September 13-20, 2005.  On September 20, 2005, the jury found in favor of Acumed.  In response to special verdict questions, the jury found (1) the '444 Patent was valid; (2) Defendants willfully infringed Claims 1, 3-5, 10, 11, and 14-17 of the '444 Patent; (3) Acumed proved it was entitled to lost profits on 60% of Defendants' sales; and (4) Acumed proved it was entitled to reasonable royalty damages in the amount of $39,170.00.  The jury also awarded Acumed damages for lost profits in the amount of $419,683.00.

At a hearing on February 22, 2006, the Court granted Acumed's Motion for Permanent Injunction, denied Defendants' Motion for Stay of Injunctive Relief Pending Appeal, and denied Defendants' Motion for Judgment as a Matter of Law or a New Trial on the Issues of Infringement, Willfulness, and Lost Profits.

On April 17, 2006, the Court issued an Opinion and Order in

3 - OPINION AND ORDER

which it granted in part and denied in part Acumed's Motion for
Treble Damages and Prejudgment Interest Pursuant to 28 U.S.C.
§ 284.  Specifically, the Court awarded Acumed a fifty-percent
enhancement of the damages determined by the jury for a total of
$688,280 and prejudgment interest in the amount of $20,517.  On
April 21, 2007, the Court entered a Judgment in Acumed's favor.
Defendants appealed.

On April 12, 2007, the Federal Circuit affirmed in part,
vacated in part, and remanded the matter to this Court.
Specifically, the Federal Circuit affirmed the Court's findings
of infringement and willfulness, but vacated the Court's decision
to enter a permanent injunction and remanded the issue to this
Court for reconsideration in light of the Supreme Court's
intervening decision in *eBay Inc. v. MercExchange, LLC*, 126 S.
Ct. 1837 (2006).  On November 13, 2007, the United States Supreme
Court denied Defendants' Petition for Certiorari as to the
Federal Circuit's April 12, 2007, Order.

On June 14, 2007, Acumed filed a Motion for Permanent
Injunction in which it seeks an order enjoining Defendants from
selling the T2 PHN.  On July 10, 2007, Acumed also filed a Motion
for Enhancement of Damages in which it seeks enhanced damages for
Defendants' post-verdict infringement.  On July 27, 2007,
Defendants filed a Motion to Strike New Facts and Argument
regarding certain facts and arguments contained in Acumed's Reply

related to its Motion for Permanent Injunction.

The Court heard oral argument on these matters on September 27, 2007, and took the Motions under advisement.

## DEFENDANTS' MOTION TO STRIKE NEW
## EVIDENCE AND ARGUMENTS

Defendants move to strike Exhibits H and I submitted with Acumed's Reply in Support of its Motion for Permanent Injunction; trial transcript pages 300, 378, 597, and 672 cited by Acumed in support of its Reply; Acumed's argument that declining sales of Polarus nails demonstrate the irreparable harm suffered by Acumed; and Acumed's argument that the cap screw mitigates the medical safety concerns raised by Defendants as to the Polarus nails on the grounds that Acumed either submitted this evidence and/or raised these issues for the first time in its Reply in support of its Motion for Permanent Injunction. Generally "'when new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond.'" *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)(quoting *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)).

The Court notes Acumed submitted the evidence and arguments at issue in response to Defendants' Response to Acumed's Motion for Permanent Injunction, which included numerous new affidavits and citations to the trial transcript. In addition, although

5 - OPINION AND ORDER

Acumed introduced the evidence and arguments at issue in its Reply, Defendants had sufficient opportunity to rebut Acumed's submissions at oral argument.

Accordingly, the Court denies Defendants' Motion to Strike.


### ACUMED'S MOTION FOR PERMANENT INJUNCTION

**I.    Federal Circuit's Remand**

In its remand order, the Federal Circuit noted:

> In ruling on the plaintiffs' motion for a permanent injunction, the district court applied "the general rule [in patent cases] that an injunction will issue, once infringement and validity have been adjudged . . . unless there are some exceptional circumstances that justify denying injunctive relief."  The Supreme Court has since struck down that general rule in *eBav v. MercExchange*, making clear that the traditional four-factor test for injunctions applies to patent cases.

*Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 811 (Fed. Cir. 2007).

On appeal, Acumed argued the facts found by this Court could serve as independent support for an injunction.  The Federal Circuit, however, declined to express its position on Acumed's argument and noted, "If we were to weigh the evidence ourselves to reach a conclusion on injunctive relief, we would effectively be exercising our own discretion as if we were the first-line court of equity.  That role belongs exclusively to the district court."  *Id*.  The Federal Circuit, therefore, directed "[o]n remand, the district court should reconsider the four-factor test

6 - OPINION AND ORDER

as propounded by the Supreme Court's decision in *eBay* as to whether or not an injunction should issue." *Id*. at 811-12.

## II.  *eBay* Four-Factor Test

In *eBay* a jury found MercExchange's patent was valid and that eBay had infringed the patent. 126 S. Ct. at 1839. Following the jury verdict, the district court denied MercExchange's motion for permanent injunction. The Federal Circuit reversed and applied the "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances." *Id*. The Supreme Court granted *certiorari* "to determine the appropriateness of this general rule." *Id*.

The Supreme Court ultimately rejected the Federal Circuit's rule:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.
>
> These familiar principles apply with equal force to disputes arising under the Patent Act.

*Id*. (citations omitted). Accordingly, the Supreme Court reversed

7 - OPINION AND ORDER

the Federal Circuit's decision and remanded the matter to the
district court for further proceedings.  *Id*. at 1842.

**III. Analysis**

Acumed asserts it has satisfied the *eBay* four-factor test,
and the Court, therefore, should enter a permanent injunction.

**A.    Irreparable Harm and Lack of an Adequate Remedy at Law**

Acumed contends it suffers and will continue to suffer
irreparable harm from Defendants' infringement because the
principal value of Acumed's patent is its statutory right to
exclude Defendants from using its technology.  Acumed, therefore,
asserts damages would be insufficient to compensate Acumed if
Defendants are allowed to continue to sell the T2 PHN.
Accordingly, Acumed seeks a permanent injunction against
Defendants' use of Acumed's technology.

To support its contention that it suffers and will
continue to suffer irreparable harm, Acumed relies on *Black &
Decker Inc. v. Robert Bosch Tool Corp.* in which the court noted

> [t]he patent statute provides injunctive relief to
> preserve the legal interests of the parties
> against future infringement which may have market
> effects never fully compensable in money.  Because
> the principal value of a patent is its statutory
> right to exclude, the nature of the patent grant
> weighs against holding that monetary damages will
> always suffice to make the patentee whole.

No. 04 C 7955, 2006 WL 3446144, at *3 (N.D. Ill. Nov. 29,
2006)(quoting *Reebok Intern. Ltd. v. J. Baker, Inc.*, 32 F.3d

1552, 1557 (Fed. Cir. 1994)(citations omitted)).

Acumed also relies on *Telequip Corp. v. Change Exchange*, No. 5:01-CV-1748 (FJS/GJD), 2006 WL 2385425 (N.D.N.Y. Aug. 15, 2006). In *Telequip*, the court concluded "monetary damages are not an adequate remedy against future infringement because 'the principal value of a patent is its statutory right to exclude.'" 2006 WL 2385425, at *2 (quoting *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 546 (D. Del. 2005)).

Acumed also asserts the evidence establishes Defendants sought to eliminate Acumed from the PHN market, and Acumed's resulting loss of market share and customers is an "important consideration showing irreparable harm and lack of an adequate remedy at law." To support its assertions regarding the significance of its loss of market share, Acumed relies on *Tivo, Inc v. EchoStar,* 446 F. Supp. 2d 664 (E.D. Tex. 2006); *Visto Corporation v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006); and *Smith & Nephew v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978 (W.D. Tenn. 2006).

In *Tivo*, the court noted the *eBay* decision, applied the same standard, and granted the plaintiff a permanent injunction. 446 F. Supp. 2d at 668. The court found

> Plaintiff has demonstrated both that it continues to suffer irreparable harm in the absence of an injunction and that there is no adequate remedy at law. Defendants compete directly with Plaintiff -

> Defendants market their infringing products to
> potential DVR customers as an alternative to
> purchasing Plaintiff's DVRs.  The availability of
> the infringing products leads to loss of market
> share for Plaintiff's products.  Loss of market
> share in this nascent market is a key consider-
> ation in finding that Plaintiff suffers
> irreparable harm-Plaintiff is losing market share
> at a critical time in the market's development,
> market share that it will not have the same
> opportunity to capture once the market matures.

*Id*.  The court noted the parties agreed customers for the

plaintiff's product tended to remain customers of the company

from which they obtained their first DVR.

> Thus, the impact of Defendants' continued
> infringement is shaping the market to Plaintiff's
> disadvantage and results in long-term customer
> loss.  This is particularly key where, as is the
> case here, Plaintiff's primary focus is on growing
> a customer base specifically around the product
> with which Defendants' infringing product
> competes.  And, as Plaintiff is a relatively new
> company with only one primary product, loss of
> market share and of customer base as a result of
> infringement cause severe injury.  Thus, the Court
> concludes that the full impact of Defendants'
> infringement cannot be remedied by monetary
> damages.

*Id*.

In *Visto*, a jury found the defendant liable for willful

patent infringement of three of the plaintiff's patents.  The

jury rejected the defendant's claims of patent invalidity and

awarded damages to the plaintiff.  2006 WL 3741891, at *1.  The

court applied the standard set out in *eBay* and issued a permanent

injunction in favor of the plaintiff.  *Id*., at *4.  The court

reasoned the plaintiff had established irreparable injury because

10 - OPINION AND ORDER

"[t]he parties . . . are direct competitors, and this fact weighs heavily in the court's analysis.  Intellectual property enjoys its highest value when it is asserted against a direct competitor in the plaintiff's market." *Id.*, at *4.  The court concluded the plaintiff also had established it did not have an adequate remedy at law because even though the jury awarded the plaintiff a large damages verdict,

> [t]hose damages . . . are designed to compensate
> Visto fairly and reasonably for its past injury.
> Under the jury's verdict, Seven is willfully using
> its competitor's intellectual property and a
> threat of continued infringement exists under this
> record.  Although future damages may compensate
> Visto for an approximate loss, that does not make
> them adequate in the sense that they are a
> suitable proxy for injunctive relief.  What makes
> legal remedies inadequate under the circumstances
> of this case is the inability to calculate the
> plaintiff's future losses with precision.  An
> injunction against the continued use of the
> plaintiff's intellectual property is the proper
> remedy to prevent future infringement.

*Id.*

In *Smith & Nephew*, the court found certain versions of the defendant's products infringed the plaintiff's patents after a court trial.  466 F. Supp. 2d at 984.  The court granted the plaintiff a permanent injunction against the defendant.  With respect to the issue of the inadequacy of damages, the court concluded

> [e]ven if monetary damages were provable for some
> tangible components of Smith & Nephew's demand for
> damages, that relief would not necessarily be
> equitable.  It is not enough that there is a

> remedy at law; it must be plain and adequate, or,
> in other words, as practical and efficient to the
> ends of justice and its prompt administration as
> the remedy in equity.  Relief in the form of
> monetary damages alone would not meet the ends of
> justice here because this remedy would allow the
> infringement to continue.  Monetary damages
> generally are not an adequate remedy against
> future infringement because the central value of
> holding a patent is the right to exclude others
> from using the patented product.  Even if Synthes
> were to terminate its sales of the infringing
> products voluntarily, it would be free to return
> to its offending conduct, thereby further imposing
> monetary and intangible losses on Smith & Nephew.
> It is the purpose of an injunction to prevent
> future violations.  Indeed, the entire purpose of
> an injunction is to take away defendant's
> discretion not to obey the law.

*Id.* (quotations and citations omitted).

Acumed notes the jury found Acumed had established that it lost sales to the Defendants in the past.  Thus, Acumed contends a permanent injunction against Defendants is warranted because Acumed will continue to lose market share and customers to Defendants as long as Defendants continue to sell the T2 PHN. In addition, according to Acumed, Defendants are direct competitors of Acumed in the PHN market; as a result, Acumed suffers and will continue to suffer irreparable harm; and the remedies at law are not adequate to compensate Acumed for such injuries.  As further evidence of lost profits and sales, Acumed points to the Declarations of Drs. Thomas Lyon and Andrew Burgess attached to Defendants' Response to Plaintiff's Motion in which the doctors testify they stopped using Acumed's product in favor

of Defendants' T2 PHN.  Lyon Decl. ¶ 2; Burgess Decl. ¶ 2.

Defendants, however, assert Acumed has not established it will lose market share or customers as a result of the availability of the T2 PHN, and, in any event, monetary damages would be adequate compensation if Acumed does lose customers or market share.  In support of their position, Defendants point out that Acumed licensed the '444 Patent to Zimmer and to Smith & Nephew, two of Acumed's competitors.  As Acumed notes, however, the jury found Acumed already had lost profits and sales as a result of the availability of the T2 PHN.  In addition, Acumed points out it licensed the '444 Patent to Smith & Nephew as part of the settlement of an action against Smith & Nephew.  Also, when Acumed licensed the '444 Patent to Zimmer, it was not a direct competitor of Acumed.

The Court finds persuasive the analyses supporting a permanent injunction in *Tivo*, *Visto*, and *Smith & Nephew*.  Based on this record, the Court concludes Acumed has established it suffers and will continue to suffer irreparable injury, and the remedies at law, such as monetary damages, are not adequate to compensate Acumed for such injury.

**B.  Balance of Hardships**

Acumed contends the balance of hardships tips in its favor because "Stryker is the largest orthopedic implant company in the world . . .: Acumed is not even on the map."  In

13 - OPINION AND ORDER

addition, the T2 PHN represents a "minuscule" portion of
Defendants' sales, but the Polarus nail is one of Acumed's
"flagship" products.  Finally, Acumed contends the preferred
embodiment in Defendants' patent application is for its nail to
be a straight nail that would not infringe the '444 Patent, and,
therefore, Stryker could avoid any hardship by adopting its own
noninfringing design based on the preferred embodiment in its
patent application.

       Defendants, however, assert the balance of hardships
favors them.  Defendants argue it would not be feasible for them
to offer a straight-nail design in the United States because
American surgeons prefer a bent shape for proximal humeral nails.
Defendants also note they spent an enormous amount of money and
time developing the T2 PHN.  In any event, Defendants contend
Acumed would benefit from a licensing agreement with Defendants
because Acmed would receive a stream of income from Defendants'
large base of customers.

       Although Defendants contend the balance of hardships
tips in their favor in part because they have expended large
amounts of money and time to develop the T2 PHN, the court noted
in *Smith & Nephew* that

              [p]atent infringement is a continuing threat to
              Smith & Nephew.  The hardship to Synthes of
              permanently enjoining its infringing conduct is
              limited to the injury ordinarily expected when an
              injunction is imposed.  Only 'hardship to the
              defendant [that] is not an inseparable part of the

14 - OPINION AND ORDER

> plaintiff's right' is cognizable.  Mere hardship
> incurred in the process of ceasing operations,
> however, is not sufficient.  Although Synthes'
> effort, time and expense in redesigning the nail
> product used for intertrochanteric fractures might
> be significant, that is the consequence of a
> patent infringement.

*Id*. at 984 (quotation omitted).  Here, as in *Smith & Nephew*, the

Court declines to consider in its balancing analysis Defendants'

expenses for designing and marketing the T2 PHN because those

expenses were incurred in developing an infringing product.  In

addition, the fact that Defendants do not find it feasible to

offer a straight-nail design in the United States is a business

decision by Defendants, and Defendants' business strategies do

not tip the balance of hardships in Defendants' favor.

    Accordingly, the Court concludes on this record that

the balance of hardships tips in Acumed's favor.

    **C.    Public Interest**

    "As a general matter, the public maintains an interest

in protecting the rights of patent holders, and injunctions serve

that interest." *Smith & Nephew*, 466 F. Supp. 2d at 2985.  The

Federal Circuit has concluded public-health interests also can be

an important factor in determining whether to grant injunctive

relief.  *See Hybritech, Inc v. Abbott Labs*., 849 F.2d 1446, 1458

(Fed. Cir. 1988)(denies preliminary injunction that would enjoin

certain cancer and hepatitis test kits).

    Defendants contend the public interest would not be

15 - OPINION AND ORDER

served by issuing a permanent injunction against them because
"public health issues are of paramount importance here.
According to Defendants, trial evidence showed that Acumed's
Polarus suffers from "rampant screw back-out problems" that
jeopardize patient health by necessitating multiple corrective
surgeries, but the T2 PHN does not have this problem.  To support
their contention of "rampant screw back-out problems" with
Acumed's product, Defendants rely on portions of the trial
transcript and the declarations of five physicians.

The pertinent portions of the trial transcript contain
the following testimony:  (1) Dr. Joseph DiCicco testified he did
not know the exact number of times that he used a Polarus nail
and had a screw back-out problem, but he believed it was close to
60 times and (2) Dr. Rosemary Buckle testified "the main problem
[she had] seen with the Polarus nail is that of the proximal
screws . . . backing out," which happened 20-30% of the time.
Tr. at 600, 634-35.  The declarations that Defendants rely on
contain the following testimony:  (1) Dr. Buckle testified she
"used the Acumed Polarus nail in the past and experienced screw
back-out problems that placed my patients at risk"; (2) Dr.
Anthony Sorkin testified he would not use the Polarus "because
[he] is aware of the screw back-out problems associated with that
nail"; and (3) Dr. Lyon testified he had used the Polarus in the
past but "stopped . . . because it suffers from screw backout

16 - OPINION AND ORDER

problems." Buckle Decl. at ¶ 4; Sorkin Decl. at ¶ 4; Lyon Decl. at ¶ 2. Dr. Burgess and Dr. Robert Probe did not testify about screw back-out problems with the Polarus, but all of the doctors testified they believe the T2 is a better product.

Nevertheless, Acumed cites a study of the Polarus nail in which it was used 60 times; suffered a screw back-out problem only one time; and, on that occasion, back-out of the screw was due to the patient falling. Tr. at 377.

The Court notes there was considerable dispute at trial concerning whether Defendants' evidence about screw back-out problems was impartial or the product of experts with a vested interest in Defendants' commercial success. Having listened to all of the trial evidence and reviewed the materials Defendants submitted in opposition to Plaintiff's Motion, the Court concludes there is not sufficient objective evidence of any public-health issue in the form of screw back-out problems with the Polarus product to find the public interest would be disserved by a permanent injunction against Defendants. In short, physicians who do not wish to use Plaintiff's product can choose a noninfringing alternative.

In summary, in the exercise of its discretion and based on the four factors set out in *eBay*, the Court concludes a permanent injunction should issue against Defendants in this case and, therefore, grants Acumed's Motion for Entry of Permanent

17 - OPINION AND ORDER

Injunction.

## ACUMED'S MOTION FOR ENHANCEMENT
## OF DAMAGES

Acumed moves for an enhancement of its damages due to Defendants' post-verdict infringement of the '444 Patent. Specifically, Acumed seeks a doubling of its damages for post-verdict sales of the T2 PHN. To support its Motion, Acumed relies on *Stryker v. Davol*, 234 F.3d 1252 (Fed. Cir. 2000).

In *Stryker*, the jury found the plaintiff's patent was not invalid and concluded the defendant willfully infringed the terms of the plaintiff's patent. *Id*. at 1256. The court entered a judgment that included a royalty, prejudgment interest, and enhanced damages of 50%. Twenty days later, the court entered a permanent injunction against the defendant for infringement and doubled the plaintiff's post-verdict damages arising from the defendant's continued sale of the infringing product. *Id*. The defendant appealed, among other things, the court's decision to enhance damages. *Id*. at 1259. The Federal Circuit found the district court considered the defendant's culpability, concluded the district court's decision to enhance pre- and post-trial damages was well within the district court's discretion, and affirmed the district court's decision. *Id*. at 1260.

Nevertheless, Defendants contend the Court should not award enhanced damages in this case because Defendants (1) moved

18 - OPINION AND ORDER

for a stay of the injunction and filed its other post-trial pleadings in a timely manner; (2) removed the T2 PHN from the market when this Court initially issued a permanent injunction; (3) recommenced selling the T2 PHN only after the Federal Circuit granted Defendants' motion for stay of injunctive relief; and (4) deposited into an escrow account $455.66 for each T2 PHN sold after the stay.  Moreover, Defendants emphasize the Federal Circuit vacated the permanent injunction entered by this Court (albeit for reconsideration in light of the Supreme Court's intervening decision in *eBay*).  Defendants also point out that the Court previously considered and rejected similar arguments by Acumed in connection with its Motion for Treble Damages on Pre-Verdict Sales.

In the Court's April 17, 2006, Order on Enhanced Damages, the Court concluded:

> Acumed argues enhancement of damages is warranted because Defendants did not immediately remove the T2 nail from the market after the jury's verdict in September 2005.  Defendants, however, have disputed the jury's findings and filed timely post-trial motions to contest the verdict.  Due to the numerous post-trial motions, the Court did not enter an injunction until February 23, 2006. Moreover, the Federal Circuit now has stayed the injunction pending Defendants' appeal.
>
> The Court concludes Defendants' actions in vigorously pursuing its right to contest the verdict do not support enhancement of damages.

Thus, on this record and in the exercise of its discretion, the Court declines to grant Plaintiff's request to enhance its

19 - OPINION AND ORDER

award of damages.  The Court notes Defendants have complied with the orders of this Court and the Federal Circuit and have placed into escrow the funds required by this Court.  Accordingly, the Court denies Plaintiff's Motion for Enhancement of Damages.

## CONCLUSION

For these reasons, the Court **DENIES** Defendants' Motion to Strike New Facts and Arguments (#247), **GRANTS** Plaintiff's Motion for Entry of Permanent Injunction (#231), and **DENIES** Plaintiff's Motion for Enhancement of Damages (#241).

IT IS SO ORDERED.

DATED this 20th day of November, 2007.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


20 - OPINION AND ORDER